UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CIT BANK, N.A.,

                              Plaintiff,

        -against-

CARMEN M. VALERIO, SAMUEL OJEDA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and HOGAR MORTGAGE AND FINANCIAL SERVICE INC.,

                              Defendants.
------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
16-cv-6644 (DRH)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By Complaint filed on December 1, 2016, Plaintiff CIT Bank, N.A. ("Plaintiff" or "CIT") commenced this diversity action pursuant to Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL") §§ 1301 *et seq.*, against Defendants Carmen M. Valerio ("Valerio"), Samuel Ojeda ("Ojeda") (Valerio and Ojeda together, the "Mortgagors"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Hogar Mortgage and Financial Service Inc. ("Hogar") (the Mortgagors, MERS and Hogar collectively, the "Defendants") seeking to foreclose a mortgage encumbering the residential property located at 567 Bayview Avenue in Inwood, New York (the "Property"). *See* Complaint ("Compl."), Docket Entry ("DE") [1]. Presently before the Court, on referral from the Honorable Denis R. Hurley, is Plaintiff's motion for summary judgment on its Complaint against the Mortgagors pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* DE [51]. For the

1

reasons set forth herein, the Court respectfully recommends that CIT's motion be denied.

## I. BACKGROUND

### A. **Factual Background**

The following facts are taken from the pleadings, affidavits, exhibits and the parties' Local Civil Rule 56.1(a) statements. Unless otherwise noted, these facts are not in dispute. Plaintiff is a national association with its principal place of business in Pasadena, California. *See* Compl. ¶ 2. The Mortgagors are residents of the state of New York and co-owners of the Property. *See id.* at ¶¶ 3-4.

On or about August 30, 2006, Valerio executed a Promissory Note endorsed in blank in the amount of $321,600.00 (the "Note"). *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Judgment of Foreclosure and Sale ("Pl. Memo"), DE [53], 2; Plaintiff's Declaration in Support of Motion ("Pl. Decl."), DE [52], Exhibit ("Ex.") C. To secure the Note, the Mortgagors executed and delivered to Hogar a Mortgage dated August 30, 2006 (the "Mortgage"). *See* Pl. Decl., Ex. C. The Mortgage was initially recorded in the office of the Nassau County Clerk on October 19, 2006, in Book 31112 at Page 47. *See* Compl. ¶ 12. On or about December 3, 2009, the Mortgage was assigned from MERS, as nominee for Hogar, to OneWest Bank, FSB, and subsequently recorded in Book 34456 at Page 929. *See* Pl. Decl., Ex. C. According to the Complaint, CIT is the successor by merger to OneWest Bank, N.A., formerly known as OneWest Bank, FSB. *See* Compl. ¶ 13. On or about June 7, 2010, the terms of the Note were modified pursuant to a Loan Modification Agreement. *See*

2

*id.* at ¶ 14; Pl. Decl., Ex. C. Plaintiff alleges that it has been in possession of the Note at all times relevant to the instant motion. *See* Pl. Decl., Ex. A (Brooks Affidavit) ¶ 5; *id.* at Ex. A (Edwards Affidavit) ¶ 4.[1]

According to CIT, the Mortgagors have been in default under the terms of the Note and Mortgage because they failed to make the January 1, 2016 and subsequent payments. *See* Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1"), DE [54], ¶ 3.[2] Somewhat inconsistently, however, Plaintiff affirms that it sent Valerio a 90-day pre-foreclosure notice "[i]n compliance with RPAPL § 1304" via "first class and certified mail" on August 12, 2015, *i.e*, prior to the alleged initial date of default. *See* Pl. Decl., Ex. A (Brooks Affidavit), ¶ 10. CIT also represents that it electronically filed the 90-day notice with the Superintendent of Financial Services on August 12, 2015, as required by RPAPL § 1306(2).[3] *See id.* at 11; Pl. 56.1 ¶ 5. Further, according to Plaintiff, a notice of default dated March 11, 2016 was mailed to the Mortgagors. *See* Pl. 56.1 ¶ 6; Pl. Decl., Ex A (Brooks Affidavit) ¶ 12; Pl. Decl., Ex. I.

---

[1] As discussed further below, the Mortgagors dispute this. *See* Defendants' Statement of Disputed Facts in Opposition to Plaintiff [sic] Motion for Summary Judgment Pursuant to Local Rule 56.1 and Counter-Statement of Facts ("Def. 56.1"), DE [64], ¶¶ 1, 11.

[2] The Mortgagers dispute that they are in default due to their failure to make the January 1, 2016 payment based on the fact that the Note was modified in 2010. *See* Def. 56.1 ¶ 3. Yet, they fail to allege that they made the monthly principal and interest payments owed under the Loan Modification Agreement. The Mortgagor's assertion that "[t]he note was modified in 2010," *see* Def. 56.1 ¶ 3, without more, does not create a genuine dispute as to whether they defaulted on their payment obligations. *See Resolution Trust Corp. v. 53 W. 72nd St. Realty Assocs.*, No. 91-cv-3299, 1992 WL 183741, at *2 (S.D.N.Y. July 22, 1992) (granting summary judgment in favor of plaintiff where mortgagor merely denied defaulting on mortgage, without setting forth "specific facts showing that there is a genuine issue for trial").

[3] Plaintiff has failed to submit a copy of the New York State Department of Financial Service 90-Day Pre-Foreclosure notice, despite its representation that it has done so. *See* Pl. Decl., Ex. A (Brooks Affidavit) ¶ 11.

3

After the Mortgagors failed to take any steps to address their default, CIT elected to accelerate the debt as permitted by the Note and Mortgage. *See* Pl. Decl., Ex. A (Edwards Affidavit) ¶ 10. As of December 27, 2018, no payments had been made, and, hence, the Note and Mortgage remain in default. *See id.* at Ex. A (Brooks Affidavit) ¶ 15. The total amount due to Plaintiff on the Note as of January 30, 2019 is $404,998.61, comprised of unpaid principal, interest, late fees, taxes and certain other costs. *See id.* at Ex. L.

## B. Procedural History

CIT commenced this action against the Mortgagors, MERS and Hogar on December 1, 2016. *See* DE [1]. On January 12, 2017, the Mortgagors filed their Answer, which asserted several affirmative defenses, including Plaintiff's failure to comply with RPAPL § 1304. *See* Answer, DE [13], ¶ 15. After MERS and Hogar neglected to timely answer or otherwise respond to the Complaint, CIT requested certificates of default against them on February 1, 2017. *See* DEs [15]-[16]. The Clerk of the Court then entered default against both MERS and Hogar on February 3, 2017. *See* DE [17].

On December 21, 2017, Plaintiff filed a motion for summary judgment against the Mortgagers, *see* DE [35],[4] which Judge Hurley referred to this Court for Report and Recommendation. *See* Electronic Order dated February 14, 2018. This Court issued a Report and Recommendation on August 15, 2018, which recommended that

---

[4] Plaintiff initially filed its motion on November 7, 2017. *See* DE [31]. However, Judge Hurley rejected this motion for failure to comply with the Court's October 10, 2017 briefing schedule. *See* Electronic Order dated November 8, 2017.

4

CIT's motion for summary judgment against the Mortgagers be denied on the grounds that Plaintiff failed to demonstrate that it had complied with the notice requirements of RPAPL § 1304. *See* DE [41] at 9-18.[5] Judge Hurley adopted the Report and Recommendation and denied CIT's motion for summary judgment on September 5, 2018. *See* DE [43].

On November 8, 2018, Plaintiff filed a letter motion indicating that it had obtained the documents necessary to establish compliance with the RPAPL § 1304 notice requirements and requesting that it be allowed to re-file its motion for summary judgment. *See* DE [44]. Judge Hurley granted CIT's motion and set a briefing schedule for the proposed summary judgment motion. *See* Electronic Order dated December 6, 2018. Following a modification to the briefing schedule, *see* DE [48] and Electronic Order dated January 15, 2019, Plaintiff filed its motion on April 5, 2019, and on April 8, 2019, Judge Hurley referred the motion to this Court for a Report and Recommendation. *See* DE [51] and Electronic Order dated April 8, 2019.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "difficult" burden of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *See Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). In deciding a motion for summary judgment, the court "is

---

[5] The Report and Recommendation further recommended that a default judgment be entered against MERS and Hogar. *See id.* at 18-19.

5

not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.") (citation omitted). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citation omitted); *see also Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are

6

matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff seeks an order: (i) granting summary judgment on its Complaint against the Mortgagors; (ii) granting its motion for a judgment of foreclosure and sale; and (iii) appointing a referee to effectuate a sale of the Property and disburse the funds obtained from such sale. *See* Pl. Memo, 16. As discussed above, CIT initially filed a summary judgment motion against the Mortgagors in December 2017, *see* DE [35], which was denied on the grounds that Plaintiff failed to demonstrate that it had complied with the notice requirements of RPAPL § 1304. *See* DE [43]. CIT now asserts that it has proof of mailing from the United States Postal Service ("USPS"), which it did not include in its first summary judgment motion, that establishes its compliance with RPAPL § 1304. *See* DE [44]; Pl. Memo, 12-13. Nonetheless, as they did in opposition to Plaintiff's first summary judgment motion, the Mortgagors again argue that questions of fact regarding whether CIT complied with RPAPL § 1304 preclude summary judgment. *See* Defendants Carmen M. Valerio & Samuel Ojeda's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and Judgment of Foreclosure and Sale ("Def. Opp."), DE [63].[6]

A plaintiff in a New York mortgage foreclosure action makes a *prima facie* case once it submits the mortgage, the unpaid note and evidence of the default. *W. Coast 2014-7, LLC v. Tolson*, No. 15-cv-6306, 2017 WL 3405517, at *4 (E.D.N.Y. Aug. 7,

---

[6] The Court does not cite page numbers because the pages of the memorandum of law are not numbered.

7

2017) (citation omitted). Both state and federal courts in New York, however, have found that proper service of a RPAPL § 1304 notice on the borrower "is a condition precedent to the commencement of a foreclosure action" and plaintiff has "the affirmative obligation to establish strict compliance with RPAPL § 1304." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 83 (E.D.N.Y. 2019) (internal quotation marks and citations omitted); *see also Wells Fargo Bank, N.A. v. Lewczuk*, 153 A.D.3d 890, 891-92, 61 N.Y.S.3d 244 (2d Dep't 2017) (quoting *Aurora Loan Servs., LLC v. Weisblum*, 85 A.D.3d 95, 106 (2d Cir. 2011)). Plaintiff cannot satisfy its burden with "conclusory statements of compliance with RPAPL's requirements." *United States v. Starr*, No. 16-cv-1431, 2017 WL 4402573, at *3 (S.D.N.Y. Sept. 29, 2017). Accordingly, in support of a motion for summary judgment, plaintiff is required to provide "sufficient evidence demonstrating the absence of material issues as to its strict compliance with RPAPL 1304, and failure to make this showing requires denial of the motion, regardless of the opposing papers." *Aurora*, 85 A.D.3d at 106; *see also Starr*, 2017 WL 4402573, at *4 (denying unopposed summary judgment motion where plaintiff failed to establish compliance with section 1304).

Here, Plaintiff has established each element of its *prima facie* foreclosure claim through its submission of the Note, the Mortgage and the affidavit of Tenisa Brooks ("Brooks"), an Assistant Secretary at LoanCare LLC, which is the servicing agent to CIT,[7] who is familiar with business records maintained by the company for the

---

[7] Plaintiff has submitted documentation, dated February 27, 2018, demonstrating the appointment of LoanCare LLC as CIT's "attorney-in-fact" with respect to, among other things, executing and delivering mortgage note endorsements. *See* Pl. Decl., Ex. A (Limited Power of Attorney).

8

purpose of servicing mortgage loans.  *See* Pl. Decl., Ex. A (Brooks Affidavit).  Brooks attests that the Mortgagors are "in default under the terms and conditions of the . . . Note and Mortgage, because the January 1, 2016 and subsequent payments were not made." *id*. at ¶ 9.  The Mortgagors argue, however, that:  (A) Plaintiff is not the holder of the Note and Mortgage and thus does not have standing to bring this action; and (B) CIT has failed to demonstrate that it complied with the notice requirements of RPAPL § 1304.  *See* Def. 56.1 ¶¶ 1, 5, 8; Def. Opp.[8]

## A. Standing

The Mortgagors argue that Plaintiff lacks standing to bring this action because the Note and Mortgage were neither delivered nor assigned to CIT.  *See* Def. 56.1 ¶ 1; Def. Opp.  A plaintiff establishes standing in a mortgage foreclosure action "where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." *Assets Recovery Ctr. Invs., LLC v. Smith*, No. 13-cv-253, 2014 WL 3525011, at *5 (E.D.N.Y. Mar. 12, 2014), *report and recommendation adopted*, 2014 WL 3528460 (E.D.N.Y. July 15, 2014) (internal quotation marks and citation omitted).

Here, CIT has demonstrated that when it commenced this action, it physically possessed the Mortgage and Note.  "New York courts have repeatedly held that proof of physical possession—such as the affidavits of [plaintiff's] corporate representative. . .—is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage

---

[8] The Mortgagors further summarily dispute Plaintiff's compliance with RPAPL §§ 1303 and 1306.  *See* Def. 56.1 ¶¶ 7, 9.  However, as they provide no arguments or evidence to raise a genuine question of fact on these issues, the Court considers them undisputed.

9

associated with the note." *CIT Bank, N.A. v. Schiffman*, No. 16-cv-5772, 2018 WL 6161971, at *4 (E.D.N.Y. Aug. 24, 2018), *report and recommendation adopted*, 2018 WL 4804644 (E.D.N.Y. Oct. 3, 2018), *appeal withdrawn*, No. 18-3287, 2019 WL 411697 (2d Cir. Jan. 15, 2019) (internal quotation marks and citation omitted). Further, a plaintiff need not provide "factual details" of the delivery of the note to establish physical possession. *See OneWest Bank, N.A. v. Melina*, No. 14-cv-5290, 2015 WL 5098635, at *4 (E.D.N.Y. Aug. 31, 2015), *aff'd*, 827 F.3d 214 (2d Cir. 2016). Plaintiff has provided copies of the Note and Mortgage and submitted affidavits from two corporate officers—Brooks and Caryn Edwards ("Edwards")—affirming that CIT was in possession of both the Note and Mortgage prior to commencing this action and thus has satisfied its burden of establishing its standing to foreclose. *See Melina*, 2015 WL 5098635, at *4 (finding that affidavits stating that plaintiff was in physical possession of the note before commencing action were sufficient to show delivery of the note and establish standing).

Plaintiff has further established its standing by showing that it is the assignee of the Note. As discussed above, CIT alleges that the Note and Mortgage were assigned to One West Bank, FSB, to whom Plaintiff is the successor by merger, *see* Compl. ¶ 13, and has submitted the Assignment of Mortgage dated December 3, 2009. *See* Pl. Decl., Ex. C (Assignment of Mortgage). An assignment is valid so long as it shows the intention of the note's owner to transfer the note. *See Schiffman*, 2018 WL 6161971, at *4. Here, the Assignment of Mortgage provides that "Mortgage Electronic Registration Systems, Inc. As Nominee for Hogar Mortgage and Financial

10

Services, Inc. . . . does herby assign and transfer to One West Bank, FSB . . . all right, title and interest in and to that certain Mortgage executed by Carmen M. Valerio and Samuel Ojeda . . ." *See* Pl. Decl., Ex. C (Assignment of Mortgage). Courts in this Circuit have found that such language is sufficient to assign a note and thus to establish a plaintiff's standing to foreclose. *See Schiffman*, 2018 WL 6161971, at *4 (citing cases). Accordingly, in addition to establishing that it has standing to foreclose as the holder of the Note, Plaintiff has further demonstrated its standing as an assignee of the Note.

### B. RPAPL § 1304

Having determined that CIT has standing to bring this action, the only remaining issue before the Court is whether Plaintiff has demonstrated, as a matter of law, that it complied with the notice requirements of RPAPL § 1304. RPAPL § 1304 requires that a lender, assignee or mortgage loan servicer transmit a notice, containing prescribed content, to the borrower at least 90 days prior to commencing a legal action for mortgage foreclosure. *See* N.Y. Real Prop. Acts. Law § 1304; *Gustavia Home, LLC v. Rice*, No. 16-cv-2353, 2016 WL 6683473, at *2 (E.D.N.Y. Nov. 14, 2016). The statute provides, *inter alia*, that the notice must be transmitted "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." N.Y. Real Prop. Acts. Law § 1304. There are several ways to establish compliance with the service provision of RPAPL § 1304. A plaintiff may submit proof of mailing issued by the USPS, such as a certified mailing receipt or a certificate of first-class mailing. *See*

11

*HSBC Bank USA, Nat. Ass'n. v. Ozcan*, 154 A.D.3d 822, 830, 64 N.Y.S.3d 38 (2d Dep't 2017) (Barros, J., dissenting) ("With both registered and certified mail, the United States Postal Service (hereinafter USPS) provides the sender with a mailing receipt as proof of mailing at the time of mailing and, upon request, an electronic record of the date and time of delivery or attempted delivery . . . . With first-class mail, the USPS, upon request and payment of a fee, provides the sender with a certificate of mailing as evidence of mailing . . . . Therefore, by requiring the lender or mortgage loan servicer to send the RPAPL 1304 notice by registered or certified mail and also by first-class mail, the legislature provided the means for the plaintiff to demonstrate its compliance with the statute, *i.e.*, by submitting the proof of mailing issued by the USPS.) (citation omitted); *see also Starr*, 2017 WL 4402573, at *4 ("[C]ourts have accepted as sufficient evidence of mailing 'uncontroverted United States Postal Service records.'") (quoting *CIT Bank, N.A. v. O'Sullivan*, No. 14-cv-5966, 2016 WL 2732185, at *5 (E.D.N.Y. May 10, 2016)).  A plaintiff may also show compliance by providing a sworn statement that the RPAPL § 1304 notice was "mailed by a particular person, or that a particular process, which resulted in mailing, was uniformly and diligently followed." *OneWest Bank, N.A. v. Guerrero*, No. 14-cv-3754, 2018 WL 2727891, at *7 (S.D.N.Y. June 6, 2018) (internal quotation marks and citation omitted).  Submitting such a sworn statement establishes a "presumption of mailing." *Id.*

In support of its motion, CIT provides an affidavit from Brooks, and re-submits the affidavit of Edwards, an Assistant Secretary at CIT, which it submitted in support

12

of its first motion for summary judgment. *See* Pl. Decl., Ex. A (Brooks Affidavit); *id.* at Ex. A (Edwards Affidavit). In addressing Plaintiff's first motion for summary judgment, this Court found that the Edwards affidavit failed to establish compliance with RPAPL § 1304. *See* DE [41] at 14 ("As the Edwards Affidavit does not affirm that Edwards personally mailed the 90-day notice to the Mortgagors, it does not amount to an affidavit of service of the actual mailing . . . Nor does Edwards name the individual that purportedly mailed the 90-day notices or describe a particular process undertaken by CIT to effectuate the mailing that was uniformly and diligently followed.") (internal quotation marks and citation omitted). The Brooks Affidavit fails to cure any of the deficiencies the Court identified with respect to the Edwards Affidavit and is in fact nearly identical to the Edwards Affidavit. The Brooks Affidavit provides the following concerning Brooks's responsibilities:

> In the regular performance of my job functions, I am familiar with business records maintained by Loancare, LLC for the purpose of servicing mortgage loans and I have personal knowledge of the operation of and the circumstances surrounding the preparation, maintenance, distribution, and retrieval of records in servicer's record keeping systems. These records (which include data compilations, electronically imaged documents and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records[]and are kept in the course of business activity conducted regularly by Loancare, LLC. It is the regular practice of Loancare, LLC mortgage servicing business to make these records. In connection with making this affidavit, I have acquired personal knowledge of the matters stated herein by examining the business records relating to the subject mortgage loan and/or confirm the information to the best of my knowledge, information and belief.

Pl. Decl., Ex. A (Brooks Affidavit) ¶ 2. With respect to Plaintiff's mailing of the 90-day notices specifically, Brooks states:

13

> In compliance with RPAPL § 1304, a 90 day pre-foreclosure notice ("90 Day Notice") was sent to Carmen M. Valerio via first class and certified mail to 567 Bayview Ave., Inwood, NY 11096-1603 which is the Property Address and Samuel Ojeda via first class and certified mail to 567 Bayview Ave, Inwood, NY 11096-1603 which is the Property Address. The 90 Day Notice was mailed on August 12, 2015 and listed at least five (5) housing counseling agencies. A copy of the 90 Day Notice and the affiliated certified mailing receipt is attached.

*Id.* at ¶ 10.

Like the Edwards Affidavit, the Brooks Affidavit is insufficient to trigger the presumption of mailing. First, the Brooks Affidavit does not affirm that Brooks personally mailed the 90-day notice to the Mortgagors and therefore does not amount to "an affidavit of service of the actual mailing." *Guerrero*, 2016 WL 3453457, at *5 (quoting *Waithe v. Citigroup, Inc.*, 42 Misc. 3d 1205(A), 983 N.Y.S.2d 207 (Sup. Ct. 2013)). Further, Brooks fails to name the individual who purportedly mailed the 90-day notice or describe a particular process undertaken by CIT to effectuate the mailing that was uniformly and diligently followed. *See id.* at *6. Rather, the Brooks Affidavit merely "states in conclusory fashion that the affiant is familiar with the bank's business practices and includes barebones detail regarding the date the 90-Day Notice was sent to [the Mortgagors]" and, hence, "does not establish compliance with RPAPL § 1304." *Id.*; *but see Wells Fargo Bank, N.A. v. Ullah*, No. 13-cv-485, 2015 WL 3735230, at *9 (S.D.N.Y. June 15, 2015) (finding a presumption of mailing where plaintiff submitted a sworn affidavit by the assistant secretary of its loan servicer detailing the process for recording mailings of 90-day foreclosure notices along with a record showing that the process was followed in the case at hand). Brooks's knowledge regarding the 90-day notices is further called into doubt by the

14

fact that she affirms that "a copy of the 90 Day Notice and the affiliated certified mailing receipt is attached" to her affidavit, when in fact no such receipt is attached. *See* Pl. Decl., Ex. A (Brooks Affidavit) ¶ 10.

CIT further submits a business record of all notices CIT mailed the Mortgagors from January 2006 to December 2018. *See* Pl. Decl., Ex. A (Letters: 5500022735); Plaintiff's Memorandum of Law in Reply in Support of Motion for Summary Judgment, Default Judgment, and Judgment of Foreclosure and Sale ("Pl. Reply"), DE [66], 2. Although Plaintiff fails to direct the Court to the section of this five-page document that purportedly demonstrates mailing of the RPAPL § 1304 notices, only two entries note the August 12, 2015 date mentioned in the Brooks Affidavit. These entries, on page four, are dated August 14, 2015 and described as "BR Cert Mail 08/12/15" and "BR Reg Mail 08/12/15." These descriptions, without more information, do not establish that the RPAPL § 1304 notices were mailed on August 12, 2015. In fact, there are no references to RPAPL § 1304 notices anywhere in this business record. The absence of any such references is especially noteworthy considering that almost all the mailings logged in this business record contain descriptions, such as "Monthly Statement 11/23/18," "Exterior BPO Request," and "Damage Claim Monitoring," which identify the general content of each mailing. Yet, even if this business record were to clearly indicate that the RPAPL § 1304 notices were sent by certified mail on August 12, 2015, it is insufficient, standing alone, to establish compliance with RPAPL § 1304. *Cf. Guerrero*, 2018 WL 2727891, at *6 ("Courts have

15

found that *the coupling* of an affidavit and a supporting record can create a presumption of mailing a 90-day Notice.") (emphasis added).[9]

Finally, Plaintiff submits a USPS form, dated March 15, 2016, which lists the names and addresses of 63 individuals, including the Mortgagors, to which CIT sent certified mail, as well as copies of two certified mail envelopes bearing the Mortgagors' names and address.[10]  *See* Pl. Decl., Ex. A (PS Form 3877).  Each envelope bears a unique 22-digit number that matches the respective numbers next to Valerio and Ojeda's names on the USPS form.  Together, the USPS form and the envelopes confirm that CIT sent the Mortgagors certified mail on March 15, 2016.[11]  However, Brooks affirms that Plaintiff sent the RPAPL § 1304 90-day notices on August 12, 2015, not on March 15, 2016.  *See* Pl. Decl., Ex. A (Brooks Affidavit) ¶ 10.  Plaintiff makes no attempt to reconcile the inconsistency between the Brooks Affidavit and the USPS form, and the Court is thus unable to conclude that the certified mail sent on March 15, 2016 contained the 90-day notices.  *See Bank of Am. Nat. Ass'n v.*

---

[9] In the cases upon which CIT relies, the plaintiffs established compliance with RPAPL § 1304 by submitting affidavits that described the procedures by which plaintiffs mailed the 90-day notices and/or copies of certified mail receipts, and Plaintiff does not cite to any case in which a business record, standing alone, establishes RPAPL § 1304 compliance.  *See* Pl. Memo, 12-13; Pl. Reply, 2-3.

[10] Plaintiff also re-submits the same 90-day notices and mailing labels purportedly sent to Mortgagors that it submitted in support of its first motion for summary judgment. *Compare* DE [36-6] *with* Pl. Decl., Ex. J.  As with the first motion for summary judgment, the Court once again finds that these notices are insufficient to demonstrate compliance with RPAPL § 1304 because they are not "uncontroverted United States Postal Service records . . . such as certified mailing receipts or certificates of first-class mailing." *See* DE [41] at 13-14 (citing *O'Sullivan*, 2016 WL 2732185, at *5).

[11] The envelopes are stamped with "Return to Sender Unclaimed Unable to Forward," *see* Pl. Decl., Ex. A, and the Mortgagors deny ever receiving these envelopes. *See* Affidavit of Samuel Ojeda ("Ojeda Aff."), DE [62-3], ¶¶ 2-5.  Nonetheless, the "controlling inquiry" is whether a plaintiff fulfills its duty to send the 90-day notice, not whether a defendant receives it. *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985); *see also Ullah*, 2015 WL 3735230, at *9 (noting that denial of receipt is insufficient to rebut the presumption of mailing) (citation omitted).

*Maharaj*, 29 Misc. 3d 1202(A), 958 N.Y.S.2d 306 (Sup. Ct. 2010) (noting that "lack of attention to detail" resulting in applications "replete with inconsistent and inaccurate proofs" regarding whether or not RPAPL § 1304 had been complied with leaves "courts throughout the State[] the unenviable and overwhelming task of closely scrutinizing hundreds and thousands of foreclosure motions to effectuate the legislative protections afforded to homeowners in the throes of foreclosure").

Plaintiff's "overwhelming evidence" of its compliance with the notice requirements of RPAPL § 1304, *see* Pl. Reply, 2,—namely: (i) the Brooks Affidavit, which affirms that the RPAPL § 1304 notices were mailed on August 12, 2015; (ii) a business record of all mail CIT sent to the Mortgagors, which lacks any reference to RPAPL § 1304; and (iii) a USPS form and envelopes, which show that Plaintiff sent the Mortgagors certified mail on March 15, 2016—amounts to little more than an inconsistent and unreliable narrative, from which the Court is unable to conclude that CIT ever mailed the RPAPL § 1304 notices, much less that it did so 90 days prior to the commencement of this action. Given that questions of fact remain regarding Plaintiff's compliance with RPAPL § 1304's mailing requirement, the Court respectfully recommends that CIT's motion for summary judgment against the Mortgagors be denied. *See Starr*, 2017 WL 4402573, at *4 ("A foreclosing mortgagee that does not clearly establish compliance with RPAPL's notice requirements 'fail[s] to meet its prima facie burden of establishing its entitlement to judgment as a matter of law.'") (alteration in original) (quoting *Deutsche Bank Nat'l Trust Co. v. Spanos*, 102 A.D.3d 909, 910, 961 N.Y.S.2d 200, 202 (2d Dep't 2013)).

## IV. CONCLUSION

For the reasons stated above, the Court respectfully recommends that Plaintiff's motion for summary judgment and associated relief as to the Mortgagors be denied.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within the specified period waives the right to appeal the District Court's order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:    Central Islip, New York
          October 29, 2019

s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge
